WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Corbin Van Osten, | No. CV-24-02268-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Corbin Van Osten ("Plaintiff") seeks judicial review of a decision by the Social Security administration ("SSA") Commissioner (the "Commissioner") denying his application for disability insurance benefits and supplemental security income benefits under the Social Security Act, 42 U.S.C. § 301 *et seq*. (the "Act"). (Doc. 1). Plaintiff filed his Opening Brief (Doc. 8), the Commissioner filed a Response (Doc. 19), and Plaintiff filed a Reply (Doc. 12). Upon review of the briefs and the Administrative Record ("AR"), the Court affirms the Administrative Law Judge's November 1, 2023, decision ("November Decision"). (AR at 20).

**I.   Background**

Plaintiff has a history of schizoaffective disorder, depression, attention deficit hyperactivity disorder ("ADHD"), and thyroid imbalance. (AR at 50). On August 24, 2023, Plaintiff filed applications for Social Security Disability Insurance ("SSDI") benefits and SSI benefits under Titles II and XVI of the Act (*Id*. at 21). These claims were denied on January 31, 2019, and again upon reconsideration on February 10, 2023. (*Id.*) An

Administrative Law Judge ("ALJ") issued an unfavorable decision on these applications on November 1, 2023 (*id*. at 21–33), finding Plaintiff was not under a disability through the date of the decision. (*Id*. at 33). Plaintiff was born in 1991, making him 32 years old at the time of the ALJ's decision. (*Id.* at 47). He possesses a high school education, and his work experience includes working as a porter and restaurant worker. (*Id.* at 47–49). Now, Plaintiff seeks a remand of the ALJ's assessment of Plaintiff's disability status.

## II.     The ALJ's Five Step Process

To be eligible for Social Security benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The ALJ follows a five-step process[1] to determine whether a claimant is disabled under the Act:

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id*. If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity"[2] in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id*. § 416.920(a)(4)(iv)-(v).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013); *see also* 20 C.F.R. § 404.1520(a)–(g). If the ALJ determines no such work is available, the claimant is disabled.

---

[1] The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett*, 180 F.3d at 1098.

[2] A claimant's residual functional capacity is defined as their maximum ability to do physical and mental work activities on a sustained basis despite limitations from their impairments. *See* 20 C.F.R. §§ 404.1545(a), 404.1520(e), 416.920(e).

*See* 20 C.F.R. § 404.1520(a)(4)(v).

*Res judicata* applies to administrative decisions but is applied less rigidly than to judicial proceedings. *Chavez*, 844 F.2d at 694. Relevant here, a presumption of continuing nondisability arises from the first ALJ's findings of nondisability. *Id.* at 693. "[T]o overcome the presumption . . . a plaintiff "must prove 'changed circumstances' indicating a greater disability." *Id.* These circumstances may include "[a]n increase in the severity of the claimant's impairment" or "the existence of an impairment not considered in the previous application." *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995). Even if a plaintiff rebuts the presumption, the previous ALJ's findings regarding a plaintiff's RFC, education, and work experience should not be disturbed unless the claimant rebuts the presumption with evidence of changed circumstance or new and material evidence. *Chavez v. Bowen*, 844 F.2d 691, 964 (9th Cir. 1988).

The ALJ's findings in the November Decision are as follows:

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the original application date of December 1, 2027. (AR at 23). At step two, the ALJ found Plaintiff has the following severe impairments: schizoaffective disorder and attention deficit disorder. (*Id.* at 24 (citing 20 C.F.R. §§ 404.1520(c) & 416.920(c)). At step three, he determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix I to subpart P of 20 C.F.R. Part 404. (*Id.*)

At step four, the ALJ found Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations: "he can understand and carry out simple (1 to 2 step) instructions, make simple judgment and work-related decisions, perform simple tasks, have occasional contact with coworkers and the public, and adapt to simple changes in a routine work setting." (*Id.* at 26–27). The ALJ further stated that Plaintiff remains capable of exercising fair to good judgment, living independently, has a sound short and long-term memory, fair concentration, and has an intact cognition with a good knowledge base. (*Id.* at 29). In

determining Plaintiff's RFC, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and 416.929 and [Social Security Ruling] 16-3p." (*Id.* at 27). The ALJ also considered medical evidence and prior administrative medical findings according to the requirements of 20 C.F.R. § 416.920c. (*Id.*) Given his assessment, the ALJ determined Plaintiff was unable to perform past relevant work experience since his application date. (*Id.* at 32).

At step five, the ALJ found that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.* at 33). Plaintiff was accordingly deemed not disabled starting from a disability onset date of December 1, 2027, through the date of the decision. (*Id.*)

The SSA Appeals Council denied Plaintiff's request for review of the November Decision, thus adopting the November Decision as the agency's final decision. (*Id.* at 1). This appeal followed. On August 30, 2024, Plaintiff filed a Complaint under 42 U.S.C. §§ 405(g), 1383(c)(3) requesting judicial review and reversal of the Commissioner's decision. (Doc. 1).

**III.   Standard of Review**

In determining whether to reverse a decision by an ALJ, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). "An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)); 42 U.S.C. §§ 405(g), 1383(c)(3)). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Garrison*, 759 F.3d at 1009 (9th Cir. 2014) (internal citation omitted). To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Orn v. Astrue*,

495 F.3d 625, 630 (9th Cir. 2007).

The ALJ is responsible for resolving conflicts, resolving ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must "set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). This is because district courts may only review those reasons the ALJ places on the record and cannot speculate what the ALJ's reasoning might have been based on other evidence available. *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

"Harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision, and the error does not affect the ultimate nondisability determination. *Id*. Typically, the claimant bears the burden of showing that an error is harmful. *Id*. at 1111 (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

**IV.    Discussion**

Plaintiff argues that the ALJ erred for the following four reasons: (1) finding the opinion of Dr. James E. Huddleston ("Dr. Huddleston") unsupported and inconsistent; (2) finding that claimant's medical impairments do not meet the criteria for 12.03C and 12.06C qualification; (3) finding that Plaintiff's alleged onset date was December 1, 2017 instead of June 17, 2019 and finally; (4) finding that Plaintiff could perform jobs that exceeded his residual functional capacity. (Doc. 8 at 1). The Court addresses each argument in turn.

**A.  Whether the ALJ Erred When Finding the Opinions of Dr. Huddleston Unsupported and Inconsistent**

First, Plaintiff claims the ALJ failed to explain how Dr. Huddleston's opinions are inconsistent with other parts of the medical record. (Doc. 8 at 10). Plaintiff claims that Dr. Huddleston performed a comprehensive exam that included a mental status examination, reviewed clinical presentations, and Plaintiff's day-to-day to come to his conclusions. (Doc. 8 at 11). He ultimately opined that Plaintiff was not "able to sustain a normal routine without supervision." (AR at 31; Doc. 7-1 at 115, Ex. B12F, Opinion of Dr. Huddleston). The Commissioner argues that the ALJ compared Dr. Huddleston's medical conclusions with other medical examiners and Plaintiff's own assertions regarding his mental state. (Doc. 11 at 9). According to the Commissioner, the ALJ properly articulated why he found Dr. Huddleston's opinion unpersuasive. (*Id.*)

Because Plaintiff's application for SSI benefits at issue occurred after March 27, 2017, she is subject to the new regulations for evaluating evidence from medical providers. *See* 20 C.F.R. § 416.920c. The new regulations eliminate the previous hierarchy of medical opinions, and the ALJ is not allowed to defer to or give specific weight to any medical opinions:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

*Id.* § 416.920c. The regulations require an ALJ to articulate how persuasive they find all the medical opinions and prior administrative medical findings and set forth specific "articulation requirements" for the ALJ's evaluation of the medical opinion evidence. Id. §§ 404.1520c(b), 416.920(b).

The Ninth Circuit confirmed that the recent changes to the SSA regulations

displaced the former hierarchy of medical opinions. *Woods*, 32 F.4th at 787. The longstanding rule that assigned "presumptive weight based on the extent of the doctor's relationship with the claimant [] no longer applies." *Id.* An ALJ no longer needs to articulate "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion. *Id.* at 792. "Now, an ALJ's decision . . . to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787 (emphasis added).

However, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* at 792. Instead, "[t]he agency must articulate how persuasive it finds all the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* Supportability refers to "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence." *Id.* at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). Consistency refers to "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

The Court concludes that there is substantial evidence to support the ALJ's decision to disregard Dr. Huddleston's opinions. To start, the ALJ reasonably found that Dr. Huddleston's opinion was unpersuasive because it contained little in terms of supporting evidence or explanation. (AR at 30; Doc. 7-1 at 115, Ex. B12F, Opinion of Dr. Huddleston). The ALJ also found Dr. Huddleston's opinion inconsistent with the Plaintiff's own reports of his abilities to operate independently and get along with others. (AR at 30). Dr. Huddleston's opinions were also inconsistent with the reports of other medical providers like Dr. Daniel Gross and Dr. Ralph Martens. (*Id.* at 29; Doc. 6-4 at 33–42, Ex. B10A, Assessment of Dr. Daniel Gross; Doc. 6-4 at 71–75, Ex. B15A, Assessment of Dr. Ralph Martens). Both medical providers found that within the broader context of treatment records and exams, Plaintiff was able to function well independently. (AR at 29). The same is true for the opinion of Dr. Jonna Dunlap, which also contradicts

Dr. Huddleston's opinion. (AR at 30; Doc. 7 at 42, Ex. B7F, Evaluation of Dr. Jonna Dunlap). Dr. Jonna Dunlap opined that Plaintiff had no cognitive impairment and based her opinion on a psychological examination, available records, clinical interview, behavioral observations, and mental status exams. (AR at 30). Not only do other medical evaluations contradict Dr. Huddleston's opinion, but Plaintiff's own medical records do as well. (Doc. 7 at 48, Ex. B8F, Plaintiff's Medical Records from Resilient Health dated June 1, 2021). *See also Woods*, 32 F.4th at 787–92 (outlining the supportability and consistency factors in evaluating physician testimony). Therefore, the Court will affirm the ALJ's decision in rejecting Dr. Huddleston's opinion.

**B.     Whether the ALJ erred in finding that claimant's medical impairments do not meet the criteria for 12.03C and 12.06C qualification**

Plaintiff argues the ALJ did not provide proper analysis in finding that his impairments did not qualify as severe under 12.03C and 12.06C. (Doc. 8 at 14). The Commissioner argues that the ALJ did support his conclusion that the requirements of both subparts were not met. (Doc. 11). The Court agrees with the Commissioner.

Listing 12.00 covers psychotic disorders with marked limits or persistent symptoms. *See* Section 12.00 Mental Disorders. To satisfy 12.03C[3] criteria a claimant needs to show a medically documented history of the existence of the disorder over a period of at least two years. *See* C.F.R Part 404, Subpart P, Appendix 1 §§ 12.03C, 12.06C. Evidence of the following supports a finding that 12.03C criteria are fulfilled: "(1) Medial treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the] mental disorder and (2) Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (*See* 12.00G2b and 12.00G2c)."

After reviewing the ALJ's decision, the Court finds that there is enough support in

---

[3] The same criteria are used to satisfy both 12.03C and 12.06C. The only difference is that 12.03C applies to schizophrenia and other psychotic disorders and 12.06C applies to anxiety and obsessive-compulsive disorders.

the ALJ's decision to conclude that the 12.03C and 12.06C criteria are not met. And while the Court sustains that if the ALJ had provided his analysis immediately following his conclusions on these two categories, that would have resulted in far less confusion, the Court also agrees with the Commissioner that support for the ALJ's conclusion exists in other parts of his decision. For example, the ALJ stated that the Plaintiff "does not have a medically documented history of the existence of the existence of the disorder over a period of at least 2 years . . . ." (AR at 26). For support, the ALJ pointed to the period from 2018 to 2022 in which Plaintiff responded well to medications, was stable, and described himself as being free from depression, anxiety, and hallucinations. (AR at 28; Doc. 7 at 48, Ex. B8F Plaintiff's Medical Records from Resilient Health dated June 1, 2021; Doc. 7-1 at 124–167, Ex. B13F, Plaintiff's Medical Records from Banner Health; Doc. 7-2 at 8, Ex. B18F, Plaintiff's Medical Records from Resilient Health). Perhaps adding to the confusion is the following statement from the ALJ: "As such, the record supports the finding that claimant has several mental impairments during the period at issue." (AR at 28). However, the ALJ was referring to the period between 2013 to 2017[4] and the ALJ also concluded that the severe mental impairment during that time was brought on by Plaintiff's substance abuse, specifically his cannabis use disorder. (AR at 29).

        Addressing the marginal adjustment part of the 12.03C and 12.06C criteria, the ALJ found in other parts of the decision that Plaintiff can adapt to changes in his environment that are not necessarily part of his daily life. (AR at 25). He can go out and shop independently, drive a car, enjoy hobbies, manage his own medications, and personal care, and interact well with others. (*Id.*) These findings contradict what is required to find a Plaintiff disabled under the listings. *See* C.F.R Part 404, Subpart P, Appendix 1 §§ 12.03C,

---

[4] Plaintiff states that the ALJ did not consider his new alleged onset date of June 2019. (Doc. 8 at 14). In defiance of this position however, Plaintiff asks the Court to discredit the only part of the ALJ's decision that conforms to Plaintiff's argument that he might have had a severe mental impairment that lasted two years. (Doc. 8 at 13–14). Looking at the period from 2013 to 2017, is the only way to conclude that Plaintiff had a severe mental impairment in line with the criteria set forth in 12.03C and 12.06C. (AR at 29). The Plaintiff asks for this timeline to be considered on the one hand, to make the argument that he has a severe mental impairment that lasted more than two years but asks the Court to disregard it when assessing the alleged onset date. The two positions are incompatible.

12.06C (stating that marginal adjustment means "that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.") Because other parts of the record and decision support the ALJ's conclusion, the Court will affirm.

### C. Whether the ALJ erred in finding that Plaintiff's alleged onset date was December 1, 2017, instead of June 17, 2019

Plaintiff stated that he requested a new alleged onset date of June 17, 2019, and that the ALJ failed to consider the new date or provide any meaningful analysis on its rejection. (Doc. 8 at 14). The Commissioner argues that this was harmless error. (Doc. 11 at 5). According to the Commissioner, even if the ALJ did not amend the alleged onset date, Plaintiff has failed to show how the new date would have changed the outcome. (*Id.*) The Court agrees that using a broader timeframe for the alleged onset date was harmless error.

It is well-settled precedent in the Ninth Circuit that harmless error principles apply in the Social Security Act context. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). An error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Put differently, an ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination." *Carmickle,* 533 F.3d at 1162; *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008); *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 885 (9th Cir.2006); *Stout,* 454 F.3d at 1055. To make such a determination, the record as a whole must be assessed. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

The Court agrees with the Commissioner that not changing the alleged onset date constitutes harmless error. Had the ALJ only confined his analysis to the alleged onset date of June 17, 2019, the Court is not convinced the outcome would be any different. Starting in 2019, and even before then, medical records indicate that Plaintiff's mental condition was stabilizing for the better. His examinations showed normal findings and

emotional stability. (Doc. 7 at 48, Ex. B8F, Plaintiff's Medical Records from Resilient Health dated June 1, 2021). In August of 2021, his medications appeared to be working. (Doc. 7-1 at 2, Ex. B9F, Plaintiff's Medical Records from Resilient Health dated August 25, 2021). In February of 2022, he reported no hallucinations. (*Id.*) In April, July, and October of 2022, he had no depression or anxiety and his examinations were all normal. (Doc. 7-1 at 124–167, Ex. B13F, Plaintiff's Medical Records from Banner Health). Most recently, in May of 2023, he denied having depression, anxiety, or any other illnesses or deficits. (Doc. 7-2 at 62, Ex. B19F, Plaintiff's Medical Records from Banner Health). When Plaintiff followed a proper course of treatment, his condition was stable and improved. (*Id.*) Looking at the record holistically, the Court cannot find why the outcome would be any different, had the ALJ only considered evidence in the record post the new alleged onset date of June 2019. *See Carmickle,* 533 F.3d at 1162 (emphasizing that if the error is inconsequential to the ultimate determination, it is considered harmless). Therefore, the Court finds that not using the new alleged onset date was harmless error and affirms the ALJ decision.

    **D.    Whether the ALJ erred in finding that Plaintiff could perform jobs that exceeded his residual functional capacity**

Finally, Plaintiff argues that the ALJ committed reversible error when he found that Plaintiff could only understand and carry out simple tasks (1 to 2 step tasks), but then relied on vocational expert testimony that he could do jobs that exceeded his residual functional capacity. (Doc. 8 at 12). The Commissioner concedes this point but states that the ALJ's step five finding is supported by other work existing in significant numbers in the national economy. (Doc. 11 at 15). The Court is inclined to agree with the Commissioner.

At the last step of the sequential disability process, a claimant's residual functional capacity is considered. 20 C.F.R. Part 404, Subpart P, Appendix 2. This is done after finding that a claimant cannot do past relevant work. 20 C.F.R. § 404. 1565. But, the ALJ at this stage can still determine that a claimant is not disabled if evidence shows that the claimant can perform other work existing in significant numbers in the national economy.

20 C.F.R. §§ 404. 1520 (a)(4)(v); 416.920(a)(4)(v). Because the ALJ has the burden of substantial evidence at step five, he can bolster his conclusion by using vocational expert testimony. 20 C.F.R. §§ 404.1566(e); 416. 966(e).

Here, the ALJ found that Plaintiff could only perform jobs with a General Educational Development ("GED")[5] Reasoning Level of 1. *See Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1003–4 (9th Cir. 205) (defining Level 1 based on the Dictionary of Occupational Titles as requiring a person to apply "a commonsense understanding to carry out simple one or two step instructions"). Comparatively, Level 2 requires a person to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." *Id.* at 1003. The vocational expert testified that Plaintiff could perform jobs that fell within both the Level 1 range and the Level 2 range such as janitor, hospital cleaner, and housekeeper/maid. (Doc. 6-3 at 72, Tr. of the Admin. Hr'g). As correctly pointed out by Plaintiff and conceded by the Commissioner, janitor and hospital cleaner both require a GED Level of 2. The only job identified by the vocational expert that can be performed by Plaintiff is housekeeper/maid. (Doc. 6-3 at 72, Tr. of the Admin. Hr'g). However, if a significant number of jobs exist in the national economy for housekeeper/maid, then the ALJ's decision does not warrant remand. *See Barker v. Sec'y of Health & Hum. Servs.*, 882 F.2d 1474, 1478 (9th Cir. 1989) ("[W]ork which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.); *see also Martinez v. Heckler,* 807 F.2d 771, 775 (9th Cir.1986) (upholding the ALJ's finding that 3,750 to 4,250 jobs was a significant number of jobs). Importantly, the vocational expert testified that 200,000 national jobs exist for the occupation of housekeeper/maid for someone with a GED Level of 2. (Doc. 6-3 at 72, Tr. of the Admin. Hr'g). Therefore, the Court finds that the ALJ's use of vocational expert testimony at step five of the evaluative process does not constitute reversible error. The Court affirms the ALJ's decision that enough jobs exist in

---

[5] GED refers to the General Educational Development reasoning scale in the Dictionary of Occupational Titles ("DOT") issued by the Department of Labor. The scale ranges from Level 1 (the lowest level) all the way to Level 6 (the highest level). *Rounds*, 807 F.3d at 1002.

the national economy for Plaintiff to perform.

## V.     Conclusion

The ALJ sufficiently conveyed his reasons for rejecting Dr. Huddleston's testimony. Likewise, the ALJ sufficiently articulated why Plaintiff's medical impairments did not meet the criteria for 12.03C and 12.06C qualification. His error in not considering the new onset date of June 17, 2019, was also harmless and he properly relied on vocational expert testimony in finding that enough jobs existed in the national economy that Plaintiff can perform. Therefore, the ALJ's decision is supported by substantial evidence.

Accordingly,

**IT IS ORDERED** that the Administrative Law Judge's November 1, 2023, Decision (AR at 20) is **affirmed.**

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to enter judgment accordingly and terminate this action.

Dated this 30th day of September, 2025.

Honorable Diane J. Humetewa
United States District Judge

- 13 -